UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Waterbury Generation LLC,<br>    *Plaintiff*,<br>    *v.*<br>Waterbury Land Partners, LLC,<br>    *Defendant*. | Civil No. 3:20cv01409 (JBA)<br><br>September 16, 2021 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

This suit, brought by Plaintiff Waterbury Generation LLC against Defendant Waterbury Land Partners, LLC requests a declaratory judgment (Count One) and alleges a violation of the Connecticut Unfair Trade Practices Act (Count Two). (*See* Am. Compl. [Doc. # 12].) Defendant now moves [Doc. # 15] to dismiss Count Two, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for which relief can be granted, arguing that Plaintiff fails to allege facts showing substantial aggravating circumstances beyond those constituting breach of contract. Defendant also moves to dismiss Plaintiff's prayer for punitive damages, on grounds that the Parties waived this form of relief through contract. Oral argument was held on August 16, 2021 [Doc. # 51]. For the following reasons, Defendant's motion is granted.

**I.  Facts Alleged**

Plaintiff alleges the following facts in its Amended Complaint. In June of 2007, Plaintiff and Defendant's predecessor, Ansonia Copper & Brass, Inc., entered into a twenty-year lease "for a specific portion" of 160 Washington Ave, Waterbury, Connecticut. (Am. Compl. ¶¶ 6-8; Ex. A, Mem. Of Law in Supp. Of Def.'s Mot. to Dismiss [Doc. # 15-2] at 8-9.) Plaintiff, the lessee, operates a power generation facility in the leased premises. (Am. Compl. ¶¶ 6-8.) The lease provides that Plaintiff "shall keep and maintain" the premises and "shall perform all commercially reasonable repairs." (*Id.* ¶ 10.) After learning of a "potential transaction whereby

[Plaintiff] may sell the [power generation f]acility," Defendant requested, in accordance with Plaintiff's obligation to make repairs, that Plaintiff install a new roof on the building and replace a wall that was damaged in a fire of an attached building. (*Id.* ¶ 11.) Plaintiff rejects this interpretation of its obligations under the lease. (*See id.*) Between February and August 2020, the Parties sought to resolve their dispute, but could not come to an agreement. (*Id.* ¶ 12.)

Plaintiff alleges that Defendant sought to "extort" Plaintiff over this disagreement. (*Id.* ¶ 18.) Defendant stated that Plaintiff could buy the building at a price above market value instead of making the requested repairs. (*Id.* ¶ 18.) Plaintiff asserts that Defendant is attempting to "strong arm" Plaintiff into purchasing the building by claiming lease default, threating litigation, and inflating repair costs. (*Id.*) Further, Plaintiff alleges, since Defendant provided Plaintiff with notice of a dispute in May 2020, it has failed to deliver valid and timely estoppel certificates, which are necessary for Plaintiff to sell its power generation facility. (*See id.* ¶¶ 24-25, 28-29.)

II. **Discussion**

    A. **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Conclusory allegations are not sufficient. *Id*. at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

### B. CUTPA Claim, C.G.S. § 42-110 *et seq*.

Defendant contends that Count Two of Plaintiff's Amended Complaint should be dismissed for failure to state a claim for which relief can be granted, arguing that Plaintiff alleges no substantial aggravating circumstance which is required by Connecticut law to elevate a contract dispute into a Connecticut Unfair Trade Practices Act ("CUTPA") violation. (Mem. Of Law in Supp. Of Def.'s Mot. to Dismiss ("Def.'s Mem. in Supp.") [Doc. # 15-1] at 2.)

Under CUTPA, Conn. Gen. Stat. § 42-110b(a), "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To assist courts in determining whether a practice violates CUTPA, the Connecticut Supreme Court has identified several relevant factors under the "cigarette rule":

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . ; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers.

*Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 350 (2010) (internal quotation marks omitted). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. at 350–51 (internal quotation marks omitted).

A CUTPA claim cannot be based simply on a breach of contract, or even an intentional breach of contract, absent aggravating circumstances. *See Boulevard Associates v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1039-40 (2d Cir. 1995). In *Boulevard Associates*, the Second Circuit noted that the "vast majority" of Connecticut courts require more than a "simple breach of contract" to sustain a CUTPA claim. *Id.* at 1039-40 (reversing the district court's finding of a CUTPA

3

violation as plaintiff did not allege or prove aggravating circumstances). Conduct including "[f]raudulent representations, fraudulent concealment, false claims[,] and multiple breaches of contract," may amount to substantial aggravating circumstances. *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865 (VAB), 2015 WL 7458504, at *6 (D. Conn. Nov. 24, 2015) (quoting *Reich v. Spencer*, No. HHDCV075012682S, 2010 WL 5573735, at *21 (Conn. Super. Ct. Dec. 10, 2010)). A claim that alleges a breach of contract to "extort more money or more favorable terms" under a contract may also be sufficient. *Ward v. Benoit*, No. 558800, 2003 WL 1996080, at *4 (Conn. Super. Ct. Apr. 3, 2003). Further, "[a] misrepresentation can constitute an aggravating circumstance that would allow a simple breach of contract claim to be treated as a CUTPA violation; it would, in effect, be a deceptive act." *Greene v. Orsini*, 50 Conn. Supp. 312, 316 (Super. Ct. 2007).

Plaintiff asserts that Defendant sought to compel Plaintiff to make the repairs or purchase the leased premise at an above market-value price by falsely construing Plaintiff's repair obligations under the lease, claiming the lease was in default, threatening Plaintiff with litigation, exaggerating potential repair costs, misrepresenting that the lease was in a state of default, and refusing to provide Plaintiff with valid estoppel certificates. (Am. Compl. ¶ 46.) Plaintiff contends that this conduct was "unethical, immoral, oppressive, unscrupulous, and violative of Connecticut public policy," caused ascertainable loss, occurred in the course of Defendant's trade, was "intentional and wanton" or at least made with "reckless indifference," and caused substantial injury. (*Id.* ¶ 48.) Whether this conduct plausibly constitutes more than a breach of contract involving purposeful, intentional conduct is the issue presented here.

Plaintiff principally relies on two cases to support the sufficiency of its pleading of substantial aggravating circumstances. (Waterbury Generation, LLC's

Mem. of Law in Opp'n to Waterbury Land Partners, LLC's Mot. to Dismiss ("Pl.'s Mem. in Opp'n") [Doc. # 16] at 3-7 (citing *Hale Farms Condo. Ass'n v. BG Laundry, LLC*, No. CV106009489S, 2011 WL 3891501 (Conn. Super. Ct. Aug. 5, 2011); *Ward v. Benoit*, No. 558800, 2003 WL 1996080 (Conn. Super. Ct. Apr. 3, 2003).) In *Hale Farms Condominium Association*, the plaintiff's unfair trade practices claim survived summary judgment where the plaintiff's evidence showed that the defendant attempted to force the plaintiff to buy the defendant's laundry equipment by withholding the rent that it owed unless the plaintiff bought its laundry equipment, extended its lease, or lied to its condominium association members about the content of the condominium bylaws regarding laundry equipment. 2011 WL 3891501, at *7 n.2. In *Ward*, the defendants exceeded the scope of work in the parties' roofing contract when they dismantled the plaintiff's home and then demanded additional money to repair the damage they caused. 2003 WL 1996080, at *1. The superior court denied a motion to strike, as the defendants' attempts to extort the plaintiff to pay more money to remedy the damage from defendants' own breach constituted substantial aggravating circumstances. *Id.* at *4.

Both of these cases, however, involved egregious conduct significantly exceeding a disputed contract term or failure of contract performance. Plaintiff characterizes Defendant's interpretation of the Parties' contract as baseless and extortionate, aimed at pressuring Plaintiff into purchasing the leased premises. (*See* Am. Compl. ¶¶ 18, 25, 46; Pl.'s Mem. in Opp'n at 7-8.) But this type of pressure over a disputed contract term is distinct from the extortion in *Hale Farms Condominium Association* where the defendant refused to pay the rent that it owed unless the plaintiff bought its laundry equipment, a demand unrelated to any contractual relationship between them, *see* 2011 WL 3891501 at *6 n.2, *8, or *Ward* where the defendants demanded additional money to repair the plaintiff's home that they

intentionally dismantled without contractual authority, 2003 WL 1996080, at *1. Instead, Plaintiff presents a profound dispute over the scope and construction of the existing repair and maintenance obligations in the Parties' lease. Allegations that Defendant tried to expand Plaintiff's repair obligations, made wrongful claims of default, threatened litigation, or failed to furnish timely estoppel certificates may constitute intentional contract breach but they are insufficient to state an independent claim under CUTPA. *See Lilly v. M.A. New England, LLC*, No. 4002239, 2006 WL 1102626, at *3 (Conn. Super. Ct. Apr. 3, 2006) (striking plaintiff's CUTPA claim for failing to allege more than a "disagreement as to the liability of additional work performed"); *D2E Holdings, LLC v. Corp. for Urban Home Ownership of New Haven*, No. CV176075593S, 2018 WL 2047944, at *1 (Conn. Super. Ct. Apr. 3, 2018) (defendant's failure to provide plaintiff with documents necessary to obtain financing for the contracted sale was insufficient to support a CUTPA claim).

Plaintiff also alleges that Defendant misrepresented that the lease was in default and inflated or misrepresented the costs of the required repairs. (Pl.'s Mem. at 7-8.) A misrepresentation can amount to aggravating circumstances as a "deceptive act." *Greene*, 50 Conn. Supp. at 316. However, "[n]ot 'every misrepresentation rises to the level of a CUTPA violation. There must be some nexus with a public interest[;] some violation of a concept of what is fair[;] some immoral, unethical, oppressive or unscrupulous business practice[;] or some practice that offends public policy.'" *Piao v. Smith*, 683 F. App'x 55, 57 (2d Cir. 2017) (quoting *Milford Paintball, LLC v. Wampus Milford Assocs., LLC*, 156 Conn. App. 750, 765 n.11 (Conn. App. Ct. 2015)).

In *Greene v. Orsini*, the Connecticut Superior Court found that the plaintiffs pleaded facts beyond a breach of contract to state a claim under CUTPA where the defendants represented to the plaintiffs that they would stop selling their sausages

6

to a competitor following the plaintiffs' complaint of violation of their noncompete agreement. 50 Conn. Supp. at 317. The court stated that this misrepresentation was in violation of the second prong of the cigarette rule as immoral, unethical, oppressive, or unscrupulous conduct. *Id.* In *Landmark Investment Group, LLC v. Chung Family Realty Partnership, LLC*, 125 Conn. App. 678 (Conn. App. Ct. 2010), *cert. denied*, 300 Conn. 914 (2011), the Connecticut Appellate Court affirmed a finding of a CUTPA violation where "the defendant engaged in a pattern of bad faith conduct, seeking to escape its contractual obligations unfairly while negotiating a more favorable offer with . . . a third party." *Id.* at 708. There, the court found nine types of aggravating circumstances sufficient to uphold a CUTPA violation, including factual misrepresentations, legal misrepresentations, and wrongful termination of a contract. *Id.* at 705-06. The misrepresentations included statements to a third party that the plaintiff was in breach, as well as assertions that the parties' agreement was "'impossible' to perform," that the contract was "null and void," and that the plaintiff "had not met its requirements under the agreement." *Id.* Moreover, in *Stanley Works Israel Ltd. v. 500 Group, Inc.*, 332 F. Supp. 3d 488 (D. Conn. 2018), the court noted that misrepresentations made during contract formation have also been sufficiently aggravating to sustain a CUTPA claim. *See id.* at 513 (quoting *Halo Tech. Holdings, Inc. v. Cooper*, No. 3:07-CV-489 (SRU), 2010 WL 1330770, at *7 (D. Conn. Mar. 31, 2010)) (listing conduct found to be significant aggravating circumstances).

Here, Defendants' alleged misrepresentation about the meaning of the contract or the price of repairs lacks sufficient nexus to conduct considered "unethical, oppressive, or unscrupulous" or violative of public policy to amount to substantial aggravating circumstances. Plaintiff does not allege that Defendant made a misrepresentation beyond a contract dispute, *see Greene*, 50 Conn. Supp. at 317, engaged in series of misrepresentations or made an unscrupulous

7

misrepresentation in the context of the thirteen-year contract, *see Landmark Investment Group, LLC*, 125 Conn. App. at 705-06, or made a misrepresentation during contract formation, *see Stanley Works Israel Ltd.*, 332 F. Supp. 3d at 513. Rather, Plaintiff only alleges "misrepresentations" in the context of the contract interpretation dispute, which does not violate public policy or amount to unscrupulous conduct. *See Greene*, 50 Conn. Supp. at 315 ("A simple breach of contract does not offend traditional notions of fairness and, standing alone, does not offend public policy so as to invoke CUTPA."). As such, Plaintiff fails to satisfy the first or second prong of the cigarette rule.

Plaintiff also pleads that Defendant's conduct violated the third prong of the cigarette rule: that Defendant caused Plaintiff to incur "substantial injury" which was "not outweighed by any countervailing benefits to consumers or competition, and consiste[d] of an injury that [Plaintiff] could not have reasonably avoided." (Am. Compl. ¶ 52.) Tellingly, Plaintiff does not allege any actual injury that it suffered and in fact, only seeks a declaratory judgment affirming its lease interpretation. (*See* Am. Compl.) Its conclusory statement that it suffered a substantial injury, without more, does not satisfy the requirement of the third prong of the cigarette rule under CUTPA. *See Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d. 91, 101 (D. Conn. 2016) (finding that the plaintiff did not plead a CUTPA claim under the third prong of the cigarette rule where she could not "point to any substantial injury that she suffered").

To bring a claim under CUTPA, a person must "suffer[] an ascertainable loss of money or property, real or personal." Conn. Gen. Stat. § 42-110g(a). Plaintiff alleges that it "incur[red] an ascertainable loss, including, but not limited to, additional attorneys' fees to address and attempt to counter [Defendant]'s improper conduct." (*See* Am. Compl. ¶ 46.) "Superior Court decisions have consistently held

8

that attorneys['] fees do not constitute an ascertainable loss under CUTPA." *Bloomfield Health Care Ctr. Of Conn. LLLC v. Jones*, No. CV175044111S, 2018 WL 1936537, at *1 (Conn. Sup. Ct. Apr. 2, 2018) (collecting cases). While no Connecticut appellate authority exists on this subject, courts in this district have followed dicta from the Connecticut Supreme Court that "'it is doubtful that the defendants would have been able to establish that the attorney's fees they incurred in defending the plaintiff's action constituted damages recoverable under' CUTPA." *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, No. 3:17-cv-579, 2021 WL 2827357, at *23 n.20 (D. Conn July 7, 2021), *appeal filed* (quoting *Rizzo Pool Co. v. Del Grosso*, 232 Conn. 666, 684–85 (1995). While Plaintiff's complaint states that its ascertainable loss is not limited to attorneys' fees, Plaintiff does not allege what such loss is in conjunction with its CUTPA claim or its claim for a declaratory judgment.

**III.   Conclusion**

For the foregoing reasons, Defendant's Motion [Doc. # 15] to Dismiss is GRANTED[1] and Plaintiff's Connecticut Unfair Trade Practices Claim in Count Two is dismissed.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of September, 2021

---

[1] Defendant also argues that Plaintiff's prayer for punitive damages must be dismissed, as the Parties contractually agreed to limit damages. (Def.'s Mem. in Supp at 9.) Plaintiff responds that the limitation on damages is inapplicable to the Parties' dispute, and further, that punitive damages cannot be waived for a CUTPA claim. (Pl.'s Mem. in Opp'n at 8-9.) As the Court dismisses Plaintiff's CUTPA claim, it does not reach the issue of whether punitive damages can be waived for a CUTPA claim.